No. 32,706

THE BEACON PUBLISHING COMPANY, *Plaintiff,* v. PAUL BURKE, as County Treasurer of Sedgwick County; C. N. CARTWRIGHT, as County Clerk, etc.; THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF SEDGWICK; GEORGE E. ROGERS, JOHN F. MILLHAUBT and HERMAN A. HILL, as County Commissioners, etc., *Defendants.*

(53 P. 2d 888)

Opinion filed January 25, 1936.

*R. R. Vermilion, Earle W. Evans, Joseph G. Carey, W. F. Lilleston, George C. Spradling* and *Henry V. Gott,* all of Wichita, for the plaintiff.

*H. W. Hart, Glenn Porter, Enos E. Hook, Getto McDonald* and *Dwight S. Wallace,* all of Wichita, for the defendants.

The opinion of the court was delivered by

HUTCHISON, J.: This is an original proceeding in mandamus brought by a corporation taxpayer to compel the defendants, the county commissioners, county clerk and county treasurer, to comply with the order of the state tax commission by changing the tax rolls of the county so as to agree with said order and cancel the excess amount of valuation of plaintiff's property and apply the proper levy to the valuation fixed by the state tax commission. An alternative writ was issued and an order was made to show cause why the court should not issue a peremptory writ of mandamus. At the same time an injunction was issued against such officers restraining them from issuing execution and selling any of plaintiff's property for taxes during the pendency of the mandamus action. The defendants have filed a motion to quash the alternative writ and also a motion to dissolve the restraining order.

The excess assessment, as claimed by the plaintiff, is that imposed by the assessor for escaped assessments for the years 1929 to 1933, inclusive, under the provisions of R. S. 79-1427. It is based upon double the assessed value of the outstanding stock of the plaintiff corporation, less the tangible property listed for taxation by the corporation for each of the five years. The motion of the plaintiff for the writ and the exhibits thereto attached state that the plaintiff, each of the five years involved, duly made its annual tax return and by inadvertence plaintiff and the deputy assessor did not fill out the blank for the value of the plaintiff's stock, but left it blank, and two of these returns were equalized by the county board of equalization, and that later in 1934 when the assessor made the assessment for the five previous years under the escaped assessment provision the plaintiff went before the county board of equalization asking for a reduction and equalization of amount of valuation after the same had been fixed by the assessor. The county board of equalization held that it had no jurisdiction over escaped assessments and the plaintiff appealed to the state tax commission, where a hearing was had, and the commission equalized the assessment, remitted the double value penalty, finding that the assessing officer was equally at fault with the taxpayer in the matter of compliance with the law, and sent down its order to the defendants.

The motion for a writ shows that the county clerk and county treasurer changed their records to conform to the order of the tax

commission and the county treasurer accepted a check from the plaintiff in full payment of the taxes after being so changed, but that when the board of county commissioners met a few days later the county clerk and county treasurer were directed by the board to disregard such order and change their records back as they were before receiving such order and return to plaintiff the money paid for taxes. This they did, but plaintiff refused to accept such remittance and returned it. Then the county treasurer sent plaintiff notices that warrants would be issued for the sale of its property for taxes if they were not paid in thirty days. This was the situation, as stated in the motion for a writ of mandamus, when the motion was filed and the alternative writ was issued.

The motion of the defendants to quash the alternative writ is like a demurrer and for the consideration thereof the statements contained in the motion for the alternative writ and the attached exhibits are regarded as the facts in the case.

A preliminary matter has to do with the injunction feature of the case. Defendants maintain that two causes of action are improperly joined, that this is an application for an injunction as well as an alternative writ of mandamus, and such misjoinder is ground for quashing the writ. There is no ambiguity about the cause of action. It is a mandamus action and not an action for an injunction. But an injunction pending the hearing of the mandamus action is always proper to hold matters *in statu quo*—in this case to prevent the sale of the property of the plaintiff until this hearing is completed.

It was held in the early case of *C. K. & W. Rld. Co. v. Comm'rs of Chase Co.*, 42 Kan. 223, 21 Pac. 1071, which was an original mandamus case like the one at bar, that—

"Inherently the supreme court must have the power to protect its own jurisdiction, its own process, its own proceedings, its own orders, and its own judgments; and for this purpose it may, when necessary, prohibit or restrain the performance of any act which might interfere with the proper exercise of its rightful jurisdiction in cases pending before it." (p. 225.)

". . . every regularly constituted court has power to do all things that are reasonably necessary for the administration of justice within the scope of its jurisdiction, and the enforcement of its judgments and mandates. . . . So demands, matters, or questions ancillary or incidental to or growing out of the main action, and which also come within the above principles, may be taken cognizance of by the court and determined, for such jurisdiction is in aid of its authority over the principal matter." (15 C. J. 810, 811.)

"The court, in the exercise of its power to grant injunctions, may issue a restraining order or temporary injunction, in aid of or as ancillary to a pro-

ceeding. . . ." (14 R. C. L. 323.) (See, also, *State v. Brewing Association,* 76 Kan. 184, 90 Pac. 777; and *Union Pac. Rld. Co. v. Missouri Pac. Rld. Co.,* 135 Kan. 450, 10 P. 2d 893.)

We have no hesitancy in concluding that there is no misjoinder of causes of action here, as there is only one cause of action in the case, and that is mandamus. The injunction feature is wholly ancillary, and as no good reason is assigned for dissolving the injunction as an ancillary matter, the motion to dissolve such injunction is denied.

The defendants insist that because the state tax commission is an administrative board and not a judicial body its findings upon legal questions are not binding on county officers and that they have discretion to do as they think best, and therefore they cannot be compelled to perform any such order issued by the tax commission either by an order of that commission or by a court. Is the compliance with the order of the commission a discretionary matter or a ministerial duty? Defendants cite *Robinson v. Jones,* 119 Kan. 609, 240 Pac. 957, in support of the view that the duties of these defendants are discretionary. That was a mandamus tax case where the county officers refused to carry out the order of the state tax commission to cancel certain uncollected taxes and refund the part collected for what was termed overriding oil royalties, and the court upheld the right of the county officers to defend on the ground that the order was erroneous as a matter of law, yet it nowhere held such matters were discretionary, but that they were purely ministerial duties.

"Plaintiffs' rights having been established by the tax commission, compliance with its mandate is a purely ministerial duty, and the suggested remedies are not fair substitutes for specific performance." (p. 611.)

It also held:

"Mandamus is a remedy properly invocable by an aggrieved taxpayer to compel a board of county commissioners to comply with an order of the tax commission to cancel uncollected taxes and to refund taxes which have been collected." (Syl. ¶ 1.)

"The tax commission is an administrative body, and its decisions in all matters within the scope of its supervisory power, involving administrative judgment and discretion, are conclusive upon subordinate taxing officials. In the exercise of its functions, the tax commission must as a matter of necessity interpret the tax laws, and such interpretations are prima facie binding." (p. 612.)

Another case cited by defendants along the same line is *Chicago,*

*R. I. & P. Rly. Co. v. Ford County Comm'rs,* 138 Kan. 516, 27 P. 2d 229, which holds that the orders of the state tax commission are not conclusive on the courts on questions of law. In other words, on such questions the matters are subject to review, but that does not help the contention of the defendant county officers, that such matters cannot be controlled by mandamus. In fact, this case cited was an original proceeding in mandamus, and it was there held:

"While the state tax commission has supervisory and controlling power over subordinate taxing officers, the power exercised is administrative, not judicial, and its decision ordering the county to issue a refunding warrant to a taxpayer who had paid an alleged illegal tax under a protest is not conclusive on the courts on questions of law nor does it prevent the court from rendering a proper judgment on the issues involved in the order." (Syl. ¶ 1.)

Defendants cite the definition of discretion given in *Farrelly v. Cole,* 60 Kan. 356, 56 Pac. 492, as follows:

"Discretion is defined, when applied to public functionaries, to be 'a power or right, conferred upon them by law, of acting officially in certain circumstances according to the dictates of their own judgment and conscience, uncontrolled by the judgment or conscience of others.'" (p. 372.)

The two cases previously cited take discretion out of the tax duties here under consideration and make them subject to review by the courts, and that is the present question. It was said in the recent case of *Kaw Valley Drainage Dist. v. Zimmer,* 141 Kan. 620, 42 P. 2d 936, that it was governed by the rule announced in the Ford county case, and then added:

"It was there said, *inter alia,* that an order of the state tax commission is only an administrative order, not a binding judgment like that of a judicial tribunal. But such an order is prima facie valid, and public officials may and should act upon it, where its validity is not promptly challenged before a court of competent jurisdiction." (p. 626.)

In *Kittredge v. Boyd,* 136 Kan. 691, 18 P. 2d 563, which was a mandamus action against the state treasurer to recover inheritance tax paid under protest, it was said that mandamus has become the familiar vehicle to accomplish the end of obtaining an authoritative determination of legal questions.

Under all these authorities cited by both parties there can be no doubt of the legal question involved in this action being one that should properly be determined in a mandamus action.

The defendants contend that they should not be compelled to comply with an order of the state tax commission which is erroneous and invalid. As shown by the authorities heretofore cited, both

the taxpayer and the county officers have a right to review the orders of the commission, and this case is brought by the taxpayer for that very purpose, viz., to review the legal questions involved in the order of the commission. In the same connection the defendants claim that the escaped assessments made by the county assessor are not subject to review.

Defendants state six particulars in which the order so made was erroneous, as follows:

"1st. In holding that the 'escaped assessment' made by the county assessor was not conclusive.

"2d. In holding that it had jurisdiction to review the 'escaped assessment.'

"3d. In holding that it had jurisdiction to equalize an 'escaped assessment.'

"4th. In holding that the plaintiff was in anywise relieved from its duty under the law of making a return of its stock on account of the alleged knowledge of assessors that the stock was in existence.

"5th. By failing and refusing to value the stock at twice its real value, after having found specifically that the stock escaped taxation for the years in question, and that the county assessor acted in accordance with law in assessing the stock as escaped property.

"6th. In grossly undervaluing the stock of the Beacon that had escaped assessment."

These relate partly to the provisions of the statute on escaped assessments, R. S. 79-1427, which is as follows:

"That if the assessor shall discover that any personal property, which was subject to taxation in any year, has not been assessed, or for any cause any portion of any personal property has escaped taxation in any year or years within five years next preceding, it shall be the duty of the assessor to list and value such property at twice its real value for each such year during which such property, or any portion thereof, was not taxed, and it shall be designated on his return as 'Escaped Assessment' for the preceding year or years, and he shall indicate in his return the year or years for which such escaped assessment or assessments is made. If the owner of such property shall be deceased, then the taxes charged as herein provided shall be assessed against the estate of such deceased person for three years only preceding his death, and shall be paid by the legal representative or representatives of such estate: *Provided,* That in the event that such escaped assessment is due to error of any assessor, or that any taxpayer was not afforded an opportunity to list his escaped property, then such escaped assessment shall be entered at its true value."

Defendants insist that for the reasons assigned above the order of the commission was erroneous, and the motion to quash the alternative writ should be sustained. The motion to quash the writ is aimed at the writ, which includes the motion for the writ and the exhibits attached, one of which is the order of the commission; and the motion to quash reaches the insufficiency of the combination

because they all go together to make up the writ. Many cases are cited on this subject from other jurisdictions which may have differently worded statutes.

The language of R. S. 79-1602 as to the duties of the county board of equalization seems to be general enough to include even escaped assessments when it states:

". . . shall make such changes in the assessment of property as shall be necessary in order to secure an assessment of all property at its actual value in money. . . . The board shall hear and determine any complaint made by any taxpayer as to the assessment and valuation of any property in the county which may be made to the board by the owner of such property or his agent or attorney."

Then the state board is created and its duties are defined by R. S. 1933 Supp. 79-1409, as follows:

"The tax commission as hereby created shall constitute a state board of equalization, and shall equalize the valuation and assessment of property throughout the state; and shall have power to equalize the assessment of all property in this state between persons, firms or corporations of the same assessment district, between cities and townships of the same county, and between the different counties of the state, and the property assessed by the said tax commission in the first instance. And any person feeling aggrieved by the action of the county board of equalization may, within thirty days after the decision of said board, appeal to the state board of equalization for a determination of such grievance."

R. S. 79-1702 also provides:

"If any taxpayer shall have a grievance not remediable or which has not been remedied under section 1 of this act such grievance may be presented to the tax commission at any time prior to the first day of August of the year succeeding the year when the assessment was made and the taxes charged which are the basis of the grievance, and the said commission shall have full authority to inquire into the grounds of complaint, and if it shall be satisfied from competent evidence produced that there is a real grievance, it may direct that the same be remedied either by canceling the tax, if uncollected, together with all penalties charged thereon, or if the tax has been paid, by ordering a refund of the amount found to have been unlawfully charged and collected."

These statutes were held to apply to excessive levies on railroad property in the case of *Atchison, T. & S. F. Rly. Co. v. Drainage District,* 133 Kan. 586, 1 P. 2d 253, and to grievances as to valuations generally and ordering of refunds in the Zimmer case.

It was held in *Lipke v. Lederer,* 259 U. S. 557, 42 S. Ct. 549, with reference to the collection of a government tax as a penalty that—

"Before collection of taxes levied by statutes enacted in plain pursuance

of the taxing power can be enforced, the taxpayer must be given fair opportunity for hearing—this is essential to due process of law." (p. 562.)

As prescribed by R. S. 79-301, every person of full age and every corporation should make a list of his taxable property for the assessor, and the order of the commission attached to the writ in this case so holds the plaintiff corporation responsible for having failed so to do, but does excuse it from the penalty imposed as the statutory proviso permits, because the assessor was equally at fault. Defendants urge that the citizens should not be made to suffer this loss of penalty because of the fault of an officer, but that is a matter to take to the legislature which added a provision to the section on escaped assessment, eliminating the penalty where the escaped assessment was due to the error of any assessor.

Our attention is directed to limitations on officers in making corrections and their liability, as prescribed by R. S. 79-1701, 79-1702 and 79-1703. The first of these sections mentions the clerical and other errors that may be corrected by the county clerk, the board of county commissioners and the state tax commission, giving to the latter such power and authority with reference to "all grievances" "not remedied as hereinbefore provided previous to February 1," and the section concludes with the following language:

"Valuations placed on property by the assessor or by the county board of equalization shall not be considered under this section as erroneous assessments."

R. S. 79-1702 is quoted above, and it authorizes the tax commission to consider the grievances of any taxpayer not remediable or which have not been remedied under section 1. (*State, ex rel., v. Riley County Comm'rs*, 142 Kan. 388, 47 P. 2d 449.) We fail to see the elimination of assessments from the grievances that may be remedied by the tax commission by these sections, as claimed by the defendants. Our statutes do not seem to exclude penalties and assessments from such grievances as may be thus remedied as the statutes of some other states seem to do.

The claim that the remedies afforded through the county equalization board and the state tax commission to the aggrieved taxpayer are limited to those of the current year will not affect the situation in this case, as the assessment for the escaped assessments was made in the current year in which the remedy was sought, although it was to cover five previous years.

It is argued that the failure of the taxing officers to list the corpo-

rate stock of the plaintiff for the five previous years is not a defense and furnishes no ground for the issuance of the writ. It may not, but under the proviso with which R. S. 79-1427 closes, it furnishes reason and facts sufficient to eliminate the penalty imposed by the assessor.

Since we have not concluded that the order of the state tax commission was erroneous, we need not consider the argument of the defendants as to the insufficiency of the writ of mandamus when one of the facts on which it is grounded is shown to be erroneous.

We cannot understand why the plaintiff lost any of its rights to relief under a writ of mandamus by the payment of the taxes while the books were in conformity with the order of the commission.

We conclude that the motion of the defendants to quash the alternative writ should be overruled and denied, and the peremptory writ of mandamus prayed for should be allowed. It is so ordered.