No. 33,671

Guy A. Thompson, Trustee of the Missouri Pacific Railroad Company, *Plaintiff*, v. The Board of County Commissioners of the County of Chautauqua, and Lee Call, as Treasurer of Chautauqua County, *Defendants*.

(75 P. 2d 839)

Opinion filed January 29, 1938.

*W. P. Waggener, O. P. May* and *B. P. Waggener,* all of Atchison, for the plaintiff.

*J. W. Dalton,* county attorney, for the defendants.

The opinion of the court was delivered by

DAWSON, C. J.: Plaintiff invokes this court's original jurisdiction in mandamus to compel obedience to an order of the state tax commission which directed a refund of certain taxes paid under protest in Chautauqua county.

The application for the alternative writ alleged that plaintiff owned certain property subject to taxation in Chautauqua county and in school district No. 44 and school district No. 83 therein; that in the year 1935 certain illegal and excessive taxes were levied for the county road fund, and for the general funds of those two school districts; that plaintiff paid those taxes in due time, but under formal, written protest, following which he instituted a proceeding before the state tax commission for such redress as the statute provided; that on November 23, 1936, after due notice to the defendant county board and to the county treasurer and to the two school districts concerned, and upon full hearing and consideration of the evidence and argument, the state tax commission made an order directing the county treasurer of Chautauqua county to refund to plaintiff certain amounts of money then in his hands which plaintiff had paid under protest, and ordering the treasurer to cancel so much of the unpaid taxes as had been illegally levied. The sums thus ordered to be refunded were:

From the county road fund levy......................... $728.47
From the S. D. No. 44 general fund levy................. 354.68
From the S. D. No. 83 general fund levy................. 213.17

In their answer and return to the alternative writ, defendants have interposed a general and specific denial, but it is clear from the entire record and from the briefs that no controverted issue of material fact is intended to be raised. What is contested is the authority of the state tax commission to make the order sought to be enforced in this proceeding. Counsel for the defendants presents three points which he states thus:

"(a) The only basis for ordering the refund was that the respective levies exceeded budgetary requirements.

"(b) In making the order, the tax commission was merely substituting its discretion for the discretion of the lawfully constituted taxing authorities.

"(c) The order shows on its face that it is contrary to law."

The proper disposition of these points requires consideration of the allegations of the alternative writ, the facts as found in the order of the state tax commission, and the pertinent provisions of the taxation statutes.

It appears that in 1934 the board of commissioners of Chautauqua county adopted a budget providing for a county road fund of $39,000 for 1935. In 1935, when the county board met to prepare the budget for the year 1936, it made a supplementary budget for the balance of the year 1935—from July 1 to December 31. There was at the time an unexpended balance of $6,115.30 in the fund which had been raised pursuant to the budget of 1934. This supplemental budget for 1935 called for an additional amount of $18,-165.30.

Assuming that the proper steps were invoked by plaintiff or by any aggrieved taxpayer, could not this supplemental budgetary estimate and the tax imposed to raise it be suppressed or corrected?

What statutory authority exists under which such a supplementary budget could be made and a tax levied to meet it? The statute (G. S. 1935, 79-2005) prescribes a method by which an aggrieved taxpayer may save his rights when he pays an illegal tax. He can file a written protest with the county treasurer clearly stating the grounds on which the whole or any part of the tax is protested and citing the law or the facts on which he relies as the basis of his protest.

By another provision of statute (G. S. 1935, 79-1702) a protesting taxpayer may present his grievance to the state tax commission—

"And the said commission shall have full authority to inquire into the grounds of complaint, and if it shall be satisfied from competent evidence produced that there is a real grievance, it may direct that the same be remedied either by canceling the tax, if uncollected, together with all penalties charged thereon, or if the tax has been paid by ordering a refund of the amount found to have been unlawfully charged and collected."

In *Robinson v. Jones,* 119 Kan. 609, 240 Pac. 957, mandamus was invoked to compel the board of county commissioners of Butler county and the county clerk to obey an order of the state tax commission directing cancellation and refunding of certain taxes. This court held the order void, but the status of the state tax commis-

sion's place in our system for the administration of the law pertaining to taxation was thus stated:

"The tax commission is an administrative body, and its decisions in all matters within the scope of its supervisory power, involving administrative judgment and discretion, are conclusive upon subordinate taxing officials. In the exercise of its functions, the tax commission must as a matter of necessity interpret the tax laws, and such interpretations are prima facie binding." (p. 612.)

In another recent case, *In re Chicago, R. I. & P. Rly. Co.*, 140 Kan. 465, 37 P. 2d 7, where the state tax commission had refused to grant a refund of alleged excessive taxes paid under protest, and the district court had dismissed the protesting taxpayer's action, this court, in affirming the judgment, said:

"When the state tax commission conducted a hearing and found that the balances in the various funds of the taxing districts of Butler county were not so large as to establish the railway company's complaint that the taxes collected on its property were excessive and unreasonable, that conclusion and determination was not a judgment or decree of a judicial nature from which an appeal would lie. It was merely the disposition of a matter which the legislature had lodged in its administrative discretion." (p. 470.)

In *Kaw Valley Drainage Dist. v. Zimmer*, 141 Kan. 620, 42 P. 2d 936, certain railroad companies paid taxes under protests which conformed with the statute pertaining thereto. Through the proper procedural steps the protesting taxpayers brought their grievances before the state tax commission. That tribunal, upon notice to all concerned, and after a hearing, made a finding that the protests were well founded, and ordered the county treasurer to refund certain sums of the protested tax moneys. The Kaw Valley Drainage District, which was chiefly concerned in the alleged excessive and illegal tax exactions which the order of the state tax commission sought to redress, brought an action in the district court to enjoin the county treasurer from obeying the order of the state tax commission. Injunction being denied below, the cause was appealed to this court. In the opinion affirming the judgment, this court, in part, said:

"And this leads us logically to appellant's next contention, which is that the state tax commission had no authority to consider and sustain the protest of the railway companies in respect to the general-fund levy of the drainage district for 1932, nor to order a refund of the taxes illegally levied and paid under protest by the railway companies. On this question of law, certain pertinent sections of the tax law will require examination. R. S. 79-1702, in substance, provides that where a taxpayer has a grievance not otherwise

remediable he can have redress through the state tax commission, which is given power, among other matters, to order a refund of the amount found to have been unlawfully charged and collected. R. S. 1933 Supp. 79-2005 also directs what preliminary steps a protesting taxpayer shall take to perfect his right to recover taxes illegally exacted. Of what avail would it be for him to conform to these steps if they were not intended by the legislature to lead to their logical fruition?" (p. 624.)

In *Beacon Publishing Co. v. Burke*, 143 Kan. 248, 53 P. 2d 888, mandamus was invoked to compel obedience to an order of the state tax commission directed to the proper county officials of Sedgwick county to cancel an excessive valuation of plaintiff's property and to apply the proper levy to the valuation fixed by the state tax commission. In a painstaking opinion by Mr. Justice Hutchison the pertinent statutes and decisions dealing with the powers of the state tax commission were considered, and obedience to the order of the commission was required by mandamus. The case of *Allen v. Burke*, 143 Kan. 257, 53 P. 2d 894, was to the same effect.

It will thus be seen that the powers, duties and supervisory responsibilities of the state tax commission are coextensive with the state's entire scheme of taxation, and defendants' objection that "the tax commission was merely substituting its discretion for the discretion of the lawfully constituted taxing authorities" is not good. The state tax commission *is* the paramount, lawfully constituted taxing authority. (*Robinson v. Jones,* 119 Kan. 609, 612, 240 Pac. 957.) Elsewhere in the same opinion it was said:

"A board of county commissioners . . . is a part of the taxing machinery and, as such, subject to control by the tax commission." (p. 612.)

Counsel for defendants cite such cases as *Chicago, R. I. & P. Rly. Co. v. Paul,* 139 Kan. 795, 33 P. 2d 304, where this court held that the mere fact that a tax levy is excessive—that it is higher than the budgetary estimates would appear to justify—is not a sufficient basis for the recovery of any portion of the taxes paid under protest pursuant to such seemingly excessive levy. The present action, however, is not a suit to recover taxes paid under protest, but a proceeding in mandamus to compel obedience to a prima facie valid order of the state tax commission. And while it is quite correct that an order of the tax commission does not have the potency of a final judgment of a court of competent jurisdiction, yet, as said in *Chicago, R. I. & P. Rly. Co. v. Ford County Comm'rs,* 138 Kan. 516, 518, 27 P. 2d 229, a decision of the state tax commission is prima facie binding. The legal potency of an order of the commis-

sion was similarly stated in *Kaw Valley Drainage Dist. v. Zimmer*, supra.

But although the order of the state tax commission is only prima facie valid, and subject to judicial scrutiny, what infirmity in the order is disclosed under the strictest scrutiny? None whatever! The vice of the levy was not merely that of being excessive; it was altogether illegal and imposed without any shadow of statutory authority, express or implied. The budget requirements for 1935 were made in 1934. When the county board met pursuant to the statute to make the budget for 1936 (G. S. 1935, 79-1802, 79-2927), it had no power to impose the additional levy for 1935. The illegality of such a levy was indisputable. Plaintiff therefore had a right to interpose a written protest when he paid his taxes. And the redress he sought and obtained from the state tax commission was regular and appropriate, although it was not his exclusive means of redress. (*Railway Co. v. Greenwood County*, 104 Kan. 818, 180 Pac. 785; *Bank of Holyrood v. Kottmann*, 132 Kan. 593, 595, 296 Pac. 357.)

Touching so much of the order of the state tax commission as directed a refund of the protested taxes of school district No. 83, we are advised that the tax commission's order has been complied with insofar as that district is concerned. The finding and order of the commission in respect to the levy for school district No. 44 reads:

"The county clerk extended a levy of 17.50 mills against the property of this district [No. 44], which the applicant contends is excessive to the extent of 5.85 mills, for the reason that the levy produces a sum in excess of the budgeted requirement. The school district represents that the only contention on the part of the applicant is that the levy produces an excessive amount of taxes. The budget of school district No. 44 calls for an ad valorem tax levy of $14,731.21. A levy of 17.50 mills produces the sum of $22,336.59, which is greatly in excess of the amount actually required, as shown by the budget. There being no dispute as to the correctness of the figures submitted by the applicant, the tax commission finds that the rate of levy is excessive to the extent of 5.85 mills, which applied to the applicant's valuation produces an illegal tax of $354.68. The county treasurer of Chautauqua county, Kansas, is ordered and directed to refund said amount to the applicant."

As a justification for their refusal to refund the protested taxes in conformity with the finding and order quoted above, defendants cite G. S. 1935, 10-1120, which declares:

"The levying of a tax by any municipality which raises more money than is used or needed for the tax year shall not be the basis of a protest by any taxpayer and all such protests shall be of no force or effect."

Of course that statute means what it says. The levying of a tax

in excess of the needs of the taxing district is not a sufficient basis to constitute the protest which by other statutes a taxpayer is authorized to interpose. But that statute does not strip the taxpayer of all legal redress for the imposition of illegal taxes. In discussing that statute, in *Kaw Valley Drainage Dist. v. Zimmer*, 141 Kan. 620, 42 P. 2d 936, we said:

"We construe this section to mean just what it says and no more. The statute does not say—and no reasonable application of the rules of statutory construction would justify its interpretation to mean—that the general provisions of the taxation statute are to be superseded and that an excessive levy of taxes is hereafter to be remediless to an aggrieved taxpayer." (p. 624.)

It follows that a peremptory writ of mandamus should issue to defendants requiring them to refund the taxes paid by plaintiff as directed by the state tax commission. It is so ordered.

HARVEY, J., dissenting.